AUTOMATIC FIRE ALARM CO. OF NEW YORK AND AUTOMATIC FIRE ALARM CO. OF DELAWARE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10292. Promulgated October 23, 1928.

*George Cotton Comstock, Esq.,* for the petitioners.
*Frank Easby-Smith, Esq.,* for the respondent.

PHILLIPS: The Commissioner of Internal Revenue, under date of October 26, 1925, notified the petitioner, Automatic Fire Alarm Co. of New York (hereinafter referred to as the New York company) that he had determined deficiencies in income and profits taxes against it of $3,907.23 for the period from January 1 to December 14, 1920, and of $4,517.67 for the calendar year 1921. On the same date he notified the petitioner, Automatic Fire Alarm Co. of Delaware (hereinafter referred to as the Delaware company) that he had de-

termined a deficiency in income and profits tax against it of $4,517.67 for the calendar year 1921. It would appear from the statements attached to such notices that there was only one deficiency of $4,517.67 for 1921, based on a consolidated return, but that such deficiency was asserted against both companies. Petitioners instituted this proceeding for a redetermination of such deficiencies.

The New York company was in existence prior to January 1, 1920. On December 15, 1920, the Delaware company was organized as a holding company to take over the stock and securities of other companies held by the New York company and also to hold the stock of the New York company. The stock of the Delaware company was distributed to the stockholders of the New York company in exchange for their stock in the latter company, share for share. From the period from December 15, 1920, to December 31, 1920, the New York company had a net loss of $7,664.94 and the Delaware company had a net loss of $65.20. The Commissioner ruled that the New York company should file a return of its income from January 1, to December 14, 1920, and that the two companies should file a consolidated return for the period from December 15, to December 31, 1920. The petitioners claim the privilege of filing a consolidated return for the full calendar year 1920. The result of the Commissioner's ruling has been that a tax is asserted against the New York company on its income to December 14, 1920, without regard to its loss during the last 15 days of the year and its invested capital is reduced by prorating it over a period less than a year.

The Commissioner's counsel, in his brief, relies upon our decision in *American LaDentelle, Inc.*, 1 B. T. A. 575. In that case two corporations which had theretofore maintained separate existences became affiliated during the year. We held that a separate return was required from each corporation to the date of affiliation and a consolidated return for the period thereafter. That the corporations became affiliated for a part of the year did not, we held, permit or require them to file a consolidated return for that part of the year when they were not affiliated. Here we have a different situation. There was no period in 1920 for which the Delaware company was liable to file a return of its separate income. At all times during its existence in 1920 it was affiliated with the New York company. For the purposes of the computation of net income, it had no separate existence but was merged with the New York company into an affiliated group. There is no such necessity for requiring several returns as existed in the case cited above or in the case of *B. T. Couch Glue Co.*, 12 B. T. A. 1321, where one of the corporations concerned had a short separate existence. We are of the opinion that the income of these two companies for 1920 must be computed on the basis of a

consolidated return of their income for the full year. See *Carroll Chain Co.*, 1 B. T. A. 38; *United States* v. *Carroll Chain Co.*, 8 Fed. (2d) 529. It may be noted that this conclusion is in accord with article 634 of Regulations 69.

Although all of the stockholders of the New York company had agreed in writing that on demand they would exchange their stock for that of the Delaware company, on December 15, 1920, 5,093 shares of the par value of $25 each and the fair market value of $70 each had not been exchanged. These were presented for exchange on the dates and in the amounts following:

| Date presented | Number of shares presented | Date presented | Number of shares presented |
|---|---|---|---|
| Dec. 20, 1920 | 2,637 | Apr. 29, 1921 | 150 |
| Dec. 24, 1920 | 512 | Apr. 30, 1921 | 10 |
| Dec. 28, 1920 | 97 | May 9, 1921 | 9 |
| Feb. 8, 1921 | 25 | May 20, 1921 | 6 |
| Feb. 23, 1921 | 33 | May 26, 1921 | 8 |
| Mar. 7, 1921 | 36 | June 27, 1921 | 40 |
| Mar. 14, 1921 | 241 | Sept. 16, 1921 | 24 |
| Mar. 24, 1921 | 11 | Sept. 23, 1921 | 26 |
| Apr. 18, 1921 | 400 | Oct. 27, 1921 | 18 |
| Apr. 19, 1921 | 160 | Nov. 18, 1921 | 650 |

It is alleged by the petitioners that the right to receive this stock was an account receivable which was erroneously excluded from the computation of admissible assets in computing allowable invested capital.

Section 326 (a) of the Revenue Act of 1921 defines invested capital. Subdivision (c) of that section then provides:

There shall be deducted from invested capital as above defined a percentage thereof equal to the percentage which the amount of inadmissible assets is of the amount of admissible and inadmissible assets held during the year.

Inadmissible assets are defined in section 325 (a) to mean stocks, bonds and other obligations, the dividends or interest from which are not included in computing net income (with certain exceptions not here pertinent) and admissible assets as all other assets.

The Delaware company appears to have set up on its books, as an asset, the par value of the stock of the New York company which had not been surrendered for exchange. The Commissioner, in computing the consolidated invested capital of the affiliated group (section 240) eliminated the amount so set up. It is the contention of the petitioners that the Delaware company owned accounts receivable consisting of the obligations of certain stockholders of the New York company to transfer that stock to the Delaware company in exchange for its stock, that such accounts receivable constituted an asset and

are to be classified as admissibles. While it might be doubtful whether the agreements with the stockholders of the New York company constituted an admissible asset if the invested capital of the Delaware company were to be computed separately, it seems clear that as to the affiliated group there was no asset.

That with which we are concerned here is not the invested capital of either company but the consolidated invested capital. The identity of the two corporations is merged into that of an affiliation for the purpose of computing consolidated invested capital. (Section 240.) One of the constituent companies has the right to receive stock of the other in exchange for its own. Viewed, however, from the viewpoint of the affiliated group, there is only the right to receive a part of its issued stock in exchange for the issuance of other stock. In such circumstances it is difficult to conceive of this exchange of stock for stock upon this reorganization as constituting an asset in the consolidated accounts to the extent of either the par value or the fair market value of the stock unexchanged. The assets of the group are unaffected by the agreement for a reorganization and for the exchange of stock. It is only the assets of the individual companies which are affected, and in considering the affiliated group for the purpose of determining consolidated invested capital these companies temporarily lose their separate identity. The action of the respondent in this respect was correct.

The New York company, as owner of capital stock of General Fire Extinguisher Co., received on August 16, 1920, the right to subscribe at par for 980 shares of additional stock of that company and acquired the right to subscribe for an additional share at a cost of $40. Such rights were to be exercised by September 1, 1920, and payment made as follows: 25 per cent at time of subscription, 25 per cent by December 1, 1920, 25 per cent by March 1, 1921, and 25 per cent by June 1, 1921. The General Fire Extinguisher Co. was to pay interest at 8 per cent on the installments. Subscribers had the right to pay for their stock in advance of the installment dates and receive their certificates, with adjustment of interest on previous payments. The New York company exercised its rights to subscribe for the shares of such stock and payments were made of $24,525 on September 1, 1920, $24,525 on December 1, 1920, $40,000 on January 3, 1921, and $9,050 on February 28, 1921. Some of such payments were made by the Delaware company. It received interest to March 1, 1921, of $1,960.36 and at that date became entitled to receive certificates. Such payment was included as interest in the 1921 return and taxed as such by the Commissioner. In determining the adjustment to be made to invested capital by reason of admis-

sible and inadmissible assets the Commissioner determined that the amount paid on account of such subscriptions and the $40 paid for the rights was an asset, but inadmissible. Petitioners contend that the entire amount of the subscription constituted an asset, admissible in character. We are of the opinion that this subscription was an asset only to the extent to which payments had been made, and not to the full amount of the subscription. We are further of the opinion that the amount paid was an admissible asset. Interest was to be, and was, paid. This interest was included in computing net income. It follows from the definition (section 325 quoted above) that this interest-bearing asset was not an inadmissible.

Under date of December 22, 1921, the New York company entered into an agreement with the Atmo Signal Corporation and one Joseph Henry Scharff, whereby the New York company obtained the exclusive right to purchase and sell for use in the cities of New York, Philadelphia, Boston and Charlestown, Mass., certain devices manufactured and controlled by the Signal Corporation and Scharff. Under such contract the New York company agreed to pay in advance at the beginning of each year for three years, the sum of $3,000, the agreement providing:

* * * Said sum so paid by Automatic for each of the said three years shall be credited against the price of devices purchased by Automatic in each of the said respective years, provided, however, that should Automatic's purchases not equal in any one year the said annual payment of Three Thousand ($3,000) Dollars, Scharff or Atmo, as the case may be, shall not be required to refund to Automatic any excess of such annual payment over the amount of such annual purchases by Automatic * * *

During 1921 the petitioner paid $3,000 under such agreement, which it seeks to deduct from its income for 1921. This payment was to be applied against any purchases made from December 22, 1921, to December 21, 1922. On this state of facts it does not appear that this was a deduction in computing income for the year which ended December 30, 1921. At the close of that year petitioner had a credit with the Atmo Company which could be utilized at any time before December 22, 1922, in the purchase of assets.

The action of the Commissioner in refusing to allow the deduction of the amount paid is approved.

Reviewed by the Board.

*Decision will be entered under Rule 50.*