WYOMING NATIONAL BANK, OF CASPER, WYOMING, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29875. Promulgated May 26, 1931.

*R. H. Hart, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

OPINION.

BLACK: Respondent has determined deficiencies against petitioner as follows:

| | |
|---|---|
| 1922 | $1, 527. 52 |
| 1923 | 1, 450. 54 |
| Total | 2, 978. 06 |

Petitioner has accepted certain adjustments and the only error alleged in its appeal is that respondent erroneously disallowed a deduction of $10,000 made from its gross income in each of the taxable years, which amounts were represented by monthly payments of $833.33⅓ each and which petitioner claims the right to deduct from its gross income as business expenses and/or rent paid in each of the taxable years.

The evidence in this case shows that the town of Casper, Wyo., is an oil town and that in 1921 it was in the midst of a boom and that the petitioner, Wyoming National Bank, was the leading bank of the city and was quartered in an old hotel building, which was unsuited for the banking business and inadequate.

The Equality Investment Company had under construction a new six-story building with modern conveniences, and petitioner took out a 20-year lease in writing on a part of this building for desirable space on the lower floor and basement for its banking business. The rent agreed upon was $10,000 a year, payable in monthly installments for the first 10 years, with an arrangement for lowering the rent for the remainder of the period if business conditions warranted it. The rent was in fact reduced in 1927, prior to the period

of readjustment named in the contract, to $8,800 per annum by agreement between the parties.

Owing to the labor situation and other difficulties, the building was not ready for occupancy on April 1, 1921, nor until much later. The petitioner's officers became impatient at the delay, because the bank was badly in need of new quarters and was losing business by not having them, and because as the construction progressed they were disappointed at the lack of facilities in the construction and plan of the banking room being prepared for petitioner. In order to speed up construction to make the place available for an early occupancy, and to make such alterations and additions as petitioner required, and to provide funds necessary therefor, in 1921 a meeting was held by representatives of the bank, the building company and others financially interested.

The building had cost the lessor more than had been expected and the banking room was unsatisfactory to the petitioner, which insisted that certain changes and additions should be made in the walls, floors, pillars, toilets, stairways and mezzanine floor. The lessor lacked money to make the necessary alterations' and it was agreed that the lessor would make the required changes at its expense and that the petitioner would loan the lessor the money with which to pay for such changes. It was further agreed that in consideration of the lessor speeding up the construction of the building and adding the improvements agreed upon, which were to cost approximately $20,000, petitioner would pay the lessor an additional rental, over the $10,000 per annum which it had already agreed to pay, of $10,000 for each of the years 1922 and 1923, and would make payment of the additional agreed amount in monthly installments of $833.33⅓ each in those respective years. An agreement to this effect to supplement the original lease agreement was drawn up and signed by both parties to the original agreement.

Acting under this supplemental agreement, the required changes were made in the banking room and petitioner loaned the Equality Investment Company the money to pay the cost thereof. The lessor building company then executed and delivered to petitioner in settlement of said loan its three promissory notes, two for $5,000 each and one for $10,000, all dated February 15, 1922, and payable in six months.

Petitioner discounted $15,000 of the notes with the Wyoming Trust Company and carried one $5,000 note in its bills receivable account. All of the notes were paid during 1922 and 1923 at the rate of $833.33⅓ per month by petitioner crediting the notes with that amount monthly, which was the amount of the increased rental agreed upon under the supplemental lease. These rental payments in

question, aggregating $10,000 in each of the years 1922 and 1923, were claimed by petitioner as ordinary and necessary deductible expenses incurred in a trade or business, but were disallowed by respondent for the reason that he considered them capital expenditures to be amortized over the term of the lease. The improvements, alterations and betterments were all of a permanent nature. The question for us to decide is whether or not the amounts in controversy were, as to the petitioner, capital expenditures and so ratably deductible over the period of the life of the lease, or were necessary expenses incurred during the taxable years by the petitioner in carrying on its business, and allowable as deductions for those years under section 234 (a) (1) of the Revenue Act of 1921, which provides that in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, and, including rentals or other payment required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity.

Section 235 of that act provides that in computing net income no deductions shall in any case be allowed in respect of any items specified in section 215, which provides that in computing net income, no deduction shall in any case be allowed in respect of: " (a) (2). Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate."

Article 109, on rentals, of Treasury Regulations 62 (1922 ed.) provides that the cost borne by a lessee in erecting buildings or making permanent improvements on ground of which he is lessee is held to be a capital investment and not deductible as a business expense. In such case, in order to return to such taxpayer his investment of capital, an annual deduction may be made from gross income of any amount equal to the total cost of such improvement divided by the number of years remaining of the term of lease.

The expenditures on the part of the owner of the building, the Equality Investment Company, were undoubtedly capital expenditures, but as to petitioner, we think the amounts which it paid out in monthly installments of $833.33⅓ during each of the taxable years were increased rentals over the amount originally agreed upon and were ordinary business expenses within the meaning of the applicable taxing act. The improvements were of a permanent nature and when completed belonged to the Equality Investment Company. It had something the capital cost of which it could re-

cover back tax-free by way of depreciation deductions taken over the life of the improvements. The additional amounts which petitioner agreed to pay and did pay during 1922 and 1923, in consideration of the lessor speeding up the construction and making the improvements, were not capital expenditures. By reason of such expenditures, it had nothing which it could set up as a capital asset on its books and amortize over the life of the lease. There is no evidence to show that petitioner made any attempt to capitalize these payments on its books. It treated them as ordinary and necessary business expenses.

On authority of section 234 (a) (1) of the Revenue Act of 1921, we hold that respondent erred in disallowing petitioner's claimed deduction of $10,000 in each of the taxable years.

Reviewed by the Board.

*Decision will be entered under Rule 50.*