## SOUTHWESTERN HOTEL CO. v. UNITED STATES.

### No. 9556.

Circuit Court of Appeals, Fifth Circuit.

Nov. 19, 1940.

Thornton Hardie, of El Paso, Tex., for appellant.

W. R. Smith, Jr., U. S. Atty., of San Antonio, Tex., and Carl J. Marold, Sp. Asst. to Atty. Gen., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

On September 1, 1933, the Southwestern Hotel Company, appellant, entered upon a 99-year lease on a hotel belonging to the Hilton Hotel Company. The lease contract between the parties provided, in Article II thereof, for the payment of graduated cash monthly rentals. In Article III of the lease, under the caption "Additional Money Rentals," it was provided that, as a further consideration for the lease, the lessees should make all payments as they became due on a balance of $424,000 on a note secured by a mortgage on the hotel building.

The mortgage debt was payable in quarterly installments on a graduated scale ranging from $5,000 to $7,000, with the last payment of $265,000 due on May 1, 1940. Appellant paid $18,000 on the note during its taxable year, and deducted that sum in its tax return as a payment of rent. The Commissioner allowed the deduction in the sum of $12,720 only, on the theory that these payments should be allocated over the 33⅓ year life of the building, because these were payments for the use of the property during that entire perior of time. The district court upheld the Commissioner. The question here, therefore, is whether these payments made in satisfaction of the mortgage debt constituted an ordinary and necessary expense paid or incurred during the taxable year in carrying on the business, within the meaning of Sec. 23(a) of the Revenue Act of 1934, c. 277, 48 Stat. 680, 688, 26 U.S.C.A. Int.Rev.Acts, page 671.

The determination of this ultimate question is reached by deciding whether this payment was rental for the use and occupancy of the premises during the particular year in which it was made, or whether it was an advance payment of rental which exceeded the actual value of the use for the year in which it was paid, and which was made in consideration of a lease for a longer period of time.

We think this question is clearly answered by an examination of the schedule of the payments due under the mortgage debt. On May 1, 1940, a payment of $265,000 was due the mortgagee, and during that same tax year $18,000 was due to the lessor. Contrasted to that, in 1941 and each calculable subsequent year, the total annual rental due was only $24,000 to $30,000. It is also true that, for each of the years that payments on the mortgage debt were due, the total annual payments made in consideration of the lease were substantially larger than the rentals due after the satisfac-

tion of that debt. Under these circumstances, it is unreasonable to believe that the payment to the mortgagee, when added to the rent paid to the lessor, aggregated the amount paid for the rent of the premises during the tax year. The mortgage payments were clearly advance payments in contemplation of future benefits accruing during the remaining years of the lease. That this was the understanding and intention of the contracting parties is made apparent by the use of the words "as a further consideration for the lease" at the beginning of the section of the contract dealing with the mortgage payments. The lease was for 99 years. These additional payments were made during the first few of those 99 years only. Therefore, the parties expressed the desire that these few payments should be in consideration of the 99-year benefits. Cf. Galatoire Bros. v. Lines, Collector, 5 Cir., 23 F.2d 676.

This court has repeatedly held that such advance payments have the character of capital investments whose benefits are spread throughout the life of the lease for which only aliquot deductions, commensurate with the ratio of the exhaustion of the lease, may be taken.[1]

The fact that these payments were called "additional rentals" in the lease contract can avail appellant nothing. The character of such payments must be determined in the light of the facts and circumstances surrounding them, and the character, not the name, must control. To hold otherwise would defeat the purpose of the act. If the name controlled the fact, this tax could be avoided by the ignorant by chance misnomer, or by the learned by intentional misnomer.

The court below allocated the payments over the $33\frac{1}{3}$ year life of the building. They should have been spread through the entire life of the lease. However, as the holding benefited the taxpayer and there is no appeal by the Government therefrom, this ruling will not be disturbed.

Affirmed.

---

[1] Main & McKinney Bldg. Co. v. Commissioner, 5 Cir., 113 F.2d 81, and cases there cited; Galatoire Bros. v. Lines, Collector, supra; Holmes Fed.Taxes, p. 913.