Oscar L. Thomas and Rita C. Thomas, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Ben F. Hadley and Katherine G. Hadley, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 64360, 64361. Filed February 13, 1959.

*Roger K. Powell, Esq.*, for the petitioners.
*Mark H. Berliant, Esq.*, for the respondent.

Tietjens, *Judge:* These proceedings involve the following deficiencies in income tax:

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 64360 | Oscar L. and Rita C. Thomas | 1953 | $170.00 |
|  |  | 1954 | 300.00 |
| 64361 | Ben F. and Katherine G. Hadley | 1953 | 530.00 |
|  |  | 1954 | 894.66 |

The issue for decision is whether certain payments made by petitioners constituted deductible rent, or represented the cost of acquiring a lease. If the latter, they would be capital expenditures recoverable over the life of the lease.

Some of the facts were stipulated.

FINDINGS OF FACT.

The stipulated facts are so found, and are incorporated herein by this reference.

During the years in issue, petitioner Oscar L. Thomas was a realtor engaged in the business of negotiating commercial leases, and petitioner Ben F. Hadley was vice president of the Columbus Mutual Life Insurance Company. Both Thomas and Hadley reported their income on the cash basis.

On July 1, 1938, the owners of property located in Columbus, Ohio, known as the Cooper Building, entered into a 20-year lease of the premises to Edward Frecker for an annual rental of $12,000. Originally Frecker leased the building for the conduct of a profitable restaurant business in which he was engaged. However, by June of 1953 Frecker had curtailed his restaurant business, had sold the restaurant located in the Cooper Building, and was using the premises solely for subletting. To aid him in the latter endeavor, Frecker employed a realtor who collected the rents, managed the property, and, after deducting commissions and expenses, remitted to Frecker the net profits of the subleasing operation. Frecker found the subletting arrangement profitable.

Prior to May 29, 1953, the owners of the Cooper Building offered Frecker a 99-year lease of the property for an annual rental of $15,000. Frecker refused the offer because of the increased rent, the length of the proposed lease, and because he felt there were uncertain business conditions.

During 1952, petitioners first learned there was a possibility of securing a 99-year lease on the Cooper Building. At that time Thomas was negotiating with a drugstore chain which indicated it was interested in establishing an outlet in the downtown area of Columbus. Thomas informed the drugstore people of a possible vacancy in the Cooper Building with a view towards leasing the premises to them. They were not interested. Petitioners pursued their negotiations with the owners of the Cooper Building, and on May 29, 1953, leased the premises from them under a 99-year lease, renewable forever, effective July 1, 1953, at an annual rental of $15,000. Hadley took a two-thirds interest in the lease and Thomas took a one-third interest therein. The lease provided in part:

The said Lessors covenant and agree to and with the said Lessees that the title to said property hereby leased is clear, free and unincumbered, except the taxes and assessments for the last half of the year 1952, which the Lessees covenant and agree to pay; it being further understood that this lease is subject to a certain 20-year term lease of said premises to Edward Frecker dated March 8th, 1938, and expiring June 30th, 1958, it being mutually understood and agreed that this present lease shall be subject to the terms and conditions

of said lease hereinabove mentioned, which lease is hereby assigned and set over to the Lessees with all rents accruing for all periods after June 30, 1953.

By letter dated June 1, 1953, Frecker was advised that petitioners had taken a 99-year lease on the premises, that they were his new lessors, and that effective July 1, 1953, he was to remit his rent to them.

During the summer of 1953, Thomas met with Frecker to discuss the latter's sublease on the premises, and to determine whether or not he wished to dispose of it. Nothing materialized from that meeting. Some 2 or 3 years later, the parties met again, and Frecker offered to sell his lease to Thomas for $250 a month for the unexpired term. The offer was not accepted.

Petitioners made unsuccessful attempts to interest a restaurant chain in leasing a portion of the premises. Negotiations with the restaurant chain commenced during 1954 and continued through 1955 and into 1956.

On their Federal income tax return for the years in issue petitioners reported their transactions with respect to the Cooper Building on Schedule F, Income From Rents and Royalties. Treating their share of rental paid by Frecker as rent received, and their share of the rent paid to their lessor as an expense, petitioners returned net losses from rental operations for each of the years in issue.

Thomas claimed rental expenses of $2,500 in 1953, and $5,000 in 1954. Respondent disallowed $500 of the 1953 expense, and $1,000 of that claimed in 1954. Hadley claimed rental expenses of $5,000 in 1953 and $10,000 in 1954. Respondent disallowed $1,000 of the 1953 claim, and $2,000 of that claimed in 1954.

The $15,000 payment made by petitioners to the owners of the Cooper Building pursuant to the terms of the lease during the years in issue constituted rent.

OPINION.

The issue is whether the excess of the amount paid by petitioners to their lessors over the amount received by them from Frecker during each of the years in issue constituted a deductible rental expense [1] or a capital expenditure.

Respondent's position is that the excess represented the cost to petitioners of obtaining the full leasehold interest in the Cooper Building at the expiration of Frecker's term, and therefore was a capital expenditure amortizable over the life of the lease. He argues that rather than one lump-sum payment, petitioners merely contracted to pay their lessors $3,000 a year for a period of 5 years, in order to insure acquisition of a valuable leasehold at the end of that time. Furthermore, he contends that the owners of the Cooper Building

---

[1] For the year 1953 section 23(a)(1)(A) of the 1939 Code applies; for the year 1954 section 162(a)(3) of the 1954 Code is applicable.

had contracted away the use and possession of the property until June 30, 1958, and that in 1953 they turned over to the petitioners only their bare right of repossession at the end of the term. Finally he submits that until the expiration of Frecker's term, petitioners could exercise no practical use, possession, or control of the premises, and had no discretion in further subletting them. He therefore concludes that all petitioners effected by their 1953 agreement was the purchase of a future leasehold interest in the property. For the reasons set forth below, we do not agree.

A taxpayer is entitled to deduct, as a business expense, those rentals which are required as a condition to the continued use or possession of property to which he has not or is not taking title, so long as they are incurred in his trade or business. Whether or not an amount is paid as rent is to be determined from the facts and circumstances giving rise to its payment, and not by the name given it by the parties. *Southwestern Hotel Co.* v. *United States*, 115 F. 2d 686 (C.A. 5, 1940), certiorari denied 312 U.S. 703 (1941). It is well settled that the cost of acquiring a leasehold interest is a capital expenditure, recoverable through amortization over the life of the lease. *Wolan* v. *Commissioner*, 184 F. 2d 101 (C.A. 10, 1950), affirming a Memorandum Opinion of this Court dated October 12, 1949. Whether the entire $15,000 paid by the petitioners was rent, or whether $3,000 thereof represented the cost of acquiring the leasehold interest, is a question of fact to be decided from the record as a whole.

After a review of the record, we are convinced that the entire $15,000 payment was bargained for by the parties, paid by the petitioners, and received by their lessors as annual rent upon the Cooper Building. This conclusion is based partly on the fact that the rental upon the premises was to remain constant throughout the 99-year term of the lease, and thus was not subject to decrease at some future date as might be expected if a portion thereof was paid as a premium. Moreover, that Frecker was offered an identical lease upon the property, for the same annual rental, corroborates petitioners' contention that the entire payment represented rent. There is nothing in this record to indicate that the parties were not dealing with one another at arm's length, or that the rental was unreasonable, or that there was some undisclosed agreement that a portion thereof was to represent the cost of acquiring a leasehold interest. We have therefore concluded, and found as a fact, that the $15,000 payment made by petitioners to their lessors during each of the years in issue represented rent.

However, respondent maintains that the net effect of the various agreements was the payment by petitioners of $3,000 per year for the privilege of receiving the entire leasehold interest at the expiration

of Frecker's term.   We do not believe the facts support this conclusion.   When petitioners first learned that a lease on the Cooper Building was available they were negotiating with a client relative to locating in the downtown area of Columbus.   Immediately they attempted to interest that client in the Cooper Building.   Moreover, they met with Frecker on two occasions in an attempt to secure the unexpired portion of his lease.   In addition, beginning in 1954, they approached a restaurant chain with a view towards leasing them space in the building.   In the light of these and other facts, it appears to us that petitioners accepted the lease upon the property subject to the unexpired term of the Frecker lease in the hope that they would be able to secure a profitable tenant, and thus recoup the difference between their rent and that paid them by Frecker.   That they were unsuccessful in their endeavors should not change the nature of their contract.

Nor do we find merit in respondent's argument that petitioners in 1953 merely purchased a future leasehold interest in the property. The lease agreement, submitted in evidence as part of the stipulation, provided that the property was leased to petitioners for a term of 99 years with all privileges and appurtenances; that they were liable for all taxes, assessments, and charges upon the property with certain minor exceptions; that they were to restore any loss to the property during the term of their lease occasioned by fire or otherwise; that they were to keep the property insured at all times; that they were to keep the property in good condition and repair; that they had the right to alter, remove, or remodel any of the existing structures on the property.   Finally it was provided that petitioners' lease was subject to the terms and conditions of the unexpired portion of the Frecker lease, and that such lease, with all rents accruing after June 30, 1953, was assigned to the petitioners.   In the light of these provisions, we are of the opinion that petitioners immediately received a present leasehold interest in the property.

Respondent contends that there is a similarity between the instant proceeding and the situation discussed in A.R.R. 676, 5 C.B. 128 (1921), and that a comparable result should obtain.   There, the taxpayer agreed to pay the corporate owner of the property a stipulated amount per year for the unexpired portion of the present tenant's lease, if it would lease the property to him at the end of that term.   The taxpayer then entered into possession of the premises subject to the terms of the existing lease.   In the instant case, petitioners did not agree to pay $3,000 a year to the owners of the Cooper Building for the unexpired portion of the Frecker lease, rather, they entered into an immediate lease of the premises for a term of 99 years.

*Decisions will be entered under Rule 50.*