HARRY W. WILLIAMSON AND MARTHA ANN WILLIAMSON, PETITION-ERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 83887. Filed February 20, 1962.

*Ben M. Davis, Esq.*, for the petitioners.
*David E. Mills, Esq.*, for the respondent.

SCOTT, *Judge:* Respondent determined a deficiency in petitioners' income tax for the calendar year 1956 in the amount of $5,785.95. The only issue for decision is whether petitioners are entitled to a deduction in 1956 in the amount of $24,693.27 claimed by them as a delay rental payment with respect to an oil and gas lease.

#### FINDINGS OF FACT.

Most of the facts are stipulated and are found accordingly.

Petitioners, husband and wife residing at Abilene, Texas, filed a joint Federal income tax return for the calendar year 1956 with the district director of internal revenue at Dallas, Texas.

Petitioners, prior to, during, and subsequent to the year 1956, were engaged in the business of producing oil and gas and other minerals,

During the years 1955, 1956, and 1957 they regularly kept their books and records on a calendar year basis and on the cash receipts and disbursements method of accounting.

Petitioners acquired in the regular course of their business an oil and gas lease dated March 1, 1956, executed by William J. Lewis, Jr., and wife, Vera Lewis, of Clarendon, Texas, covering certain lands estimated to comprise 49,385.54 acres. The lease provided that, subject to the other provisions contained therein, it should be for a term of 10 years from March 1, 1956. It was further provided in the lease that if on any anniversary date thereof during the primary term of 10 years, oil or gas was not being produced from any block previously designated by the lessee, in accordance with another provision of the lease, and lessee was not then engaged in drilling a well in search of oil or gas at a location upon some part of the land included within that particular block, the lease should terminate with respect to all of the land contained within that particular block, unless the lessee on or before such anniversary date should pay or tender to the lessor or to the credit of the lessor in the Donley County State Bank at Clarendon, Texas, a sum of money equal to the product obtained by multiplying 50 cents by the number of acres of land contained within that particular block. The lease also provided that the rights of either party thereunder could be assigned in whole or in part and that the provisions thereof would extend to the heirs, successors, and assigns, but that no change or divisions in ownership of the land, rentals, or royalties, however accomplished, should operate to enlarge the obligations or diminish the rights of the lessee. In case the lessee assigned the lease in whole or in part, the lessee was to be relieved of all obligations with respect to the assigned portion or portions which might arise subsequent to the date of assignment.

Petitioners deposited to the credit of the lessors with the Donley County State Bank, Clarendon, Texas, a check dated December 27, 1956, in the amount of $24,693.27. This check bears an endorsement by the Donley County State Bank under date of December 28, 1956, and was stamped "paid" by the bank upon which it was drawn on January 2, 1957. The check bears the following notation on its face: "annual delay rental Oil & Gas Lease, Wm. J. Lewis, Jr. & Vera Lewis, Briscoe & Hall County, Texas due 3-1-57—3-1-58, lease of record in Vol. 111, pages 198 et seq. records of Hall Co., Texas."

In the year 1956, petitioners did not claim as a deduction any delay rental payments other than the $24,693.27 here involved. The depositing of petitioners' check with the Donley County State Bank, Clarendon, Texas, on December 27, 1956, constituted a payment on that date of the delay rental to the lessors.

Respondent, in his notice of deficiency, disallowed the deduction claimed by petitioners for the year 1956 as delay rental payment in the amount of $24,693.27 with the following explanation:

It is determined that the deduction of $24,693.27 claimed on your Federal income tax return for the taxable year ended December 31, 1956 as a delay rental covering one year from March 1, 1957 in respect to an oil and gas lease is not allowable under the internal revenue laws. Your income is increased accordingly.

## OPINION.

The question here presented is whether a taxpayer on the cash basis of accounting is entitled to deduct an advance payment of a delay rental with respect to an oil and gas lease.[1]

Advance rentals generally are deductible only in the taxable year for which they are paid or are spread ratably over the taxable years for which paid, whether the taxpayer keeps his books and reports his income on the cash receipts and disbursements basis of accounting or an accrual basis. *J. Alland & Bros., Inc.*, 1 B.T.A. 631 (1925); *Baton Coal Co.*, 19 B.T.A. 169, affd. 51 F. 2d 469 (C.A. 3, 1931), certiorari denied 284 U.S. 674 (1931); *Galatoire Bros.* v. *Lines*, 23 F. 2d 676 (C.A. 5, 1928); *Main & McKinney Bldg. Co.* v. *Commissioner*, 113 F. 2d 81 (C.A. 5, 1940), affirming a Memorandum Opinion of this Court, certiorari denied 311 U.S. 688 (1940). These cases hold that an advance payment of rent is in the nature of a capital investment, the benefits of which are spread throughout the life of the lease.

Petitioners contend that the decisions with respect to rentals generally are not applicable to delay rentals paid in connection with an oil and gas lease.

In a number of cases we have recognized the similarity of delay rental payments and other fixed sum payments to secure the right to hold an oil and gas lease to other rental payments. *Olen F. Featherstone*, 22 T.C. 763, 771 (1954), and cases there cited. In *Henry*

---

[1] It is clear from the facts in this case that the petitioners who are cash basis taxpayers made the payment of $24,693.27 in accordance with the method of payment specified in the lease in the year 1956. Petitioners argue this point in their brief but in his reply brief respondent concedes this point.

Petitioners offered testimony of an accountant that some producers who have a number of leases which involve payments of delay rentals, customarily make such payments 30 to 60 days in advance of the anniversary date of the lease, since from a practical standpoint if such a producer waited until near the mandatory date, it might develop that some payment with respect to a valuable lease inadvertently would not be timely made. The testimony is inconclusive as to whether the practice of payment 30 to 60 days in advance of the due date is a recognized custom of the industry for producers with a number of leases involving delay rentals. In any event, such a custom, if shown, would not be applicable to petitioners in this case, since they had no delay rental payments in the year 1956 other than the one here involved. We have involved in the instant case only the year 1956, and, therefore, need not pass upon petitioners' argument that if the theory of deduction of a payment being allowed for the year that the lease covers had been followed by respondent, he would have prorated the deduction between 1957 and 1958 instead of allocating the entire deduction to the year 1957.

*Cartan*, 30 T.C. 308 (1958), we held that a sum deposited by oil producers for withdrawal over a period of years for payment of rentals on oil and gas leases, was not deductible in the year in which the deposit was made but was deductible ratably over the years covered by the leases. We stated at page 317:

Clearly, it may reasonably be argued that petitioners intended that their deposit of $45,000 should constitute an advance payment of the share of the rental which Tide Water and Standard demanded they contribute.

It has long been held that such advance payments may not be deducted as a business expense in the year paid but must be apportioned as an expense over the entire term of the lease. * * *

Petitioners have pointed to no logical reason why the year in which the delay rental payment here involved is deductible, should not be governed by the principles applicable to rental payments generally.

However, even if petitioners were correct in their argument that a delay rental should not be considered as other rentals for the use of property since it does have some characteristics of a penalty payment for failure to have proceeded with exploitation of the land, it does not follow that such payment is deductible in the year paid by a cash basis taxpayer solely because payment was made in that year. Payment of the amount here involved was not due until March 1, 1957, and was for the purpose of keeping the lease in effect until March 1, 1958. Petitioners have produced no evidence to show why such a payment was an ordinary and necessary expense for the year 1956. In order to sustain their position that the delay rental payment here involved is properly deductible in 1956, it is incumbent upon petitioners to show that such payment constituted an ordinary and necessary expense of that year. *Automatic Fire Alarm Co.*, 13 B.T.A. 1195, 1199 (1928); *Martha R. Peters*, 4 T.C. 1236, 1242 (1945); *Samuel Hellerman*, 14 T.C. 738 (1950); and *Robert S. Bassett*, 26 T.C. 619 (1956). Petitioners cite a number of cases in which deductions have been allowed for payments made in advance of the year in which the products involved were to be received. In this respect petitioners rely primarily upon *Cravens* v. *Commissioner*, 272 F. 2d 895 (C.A. 10, 1959), reversing 30 T.C. 903 (1958); and *John Ernst*, 32 T.C. 181 (1959). In the first of these cases the circuit court based its decision primarily upon the fact that the taxpayer there involved had shown that it was necessary that he arrange ahead of time for the procurement of cattle feed because of the shortage of such feed occasioned by an extended period of drought. No comparable situation is shown by the facts in the instant case. The circuit court in the *Cravens* case considered cases denying the deductibility of advance payments to be distinguishable on a factual basis from the case there being considered. In *John Ernst, supra*, the payment by a poultry dealer pursuant to a contract for feed in the year preceding the year

in which such feed was used was held not to constitute an advance payment. Under the facts there present the payment was considered as equivalent to the purchase of a physical inventory of such feed.

Another of the cases relied upon by petitioners, *Waldheim Realty & Inv. Co.* v. *Commissioner*, 245 F. 2d 823 (C.A. 8, 1957), reversing 25 T.C. 1216, involved a cash basis taxpayer engaged in the business of ownership and management of real estate who had since the inception of the income tax statutes deducted insurance when paid even though it might cover future years. The circuit court relied heavily in its decision on the showing of a consistent practice over a long period of years. The facts in the instant case show no prior year in which petitioners had deducted a delay rental payment in advance of the year in which it was due. The facts in the instant case show no reason for petitioners' payment in 1956 of an obligation which would not arise until 1957 and fail to show that such payment constituted an ordinary and necessary business expense in 1956. We hold that petitioners are not entitled to a deduction in 1956 for the $24,693.27 payment in that year as a delay rental.

*Decision will be entered for the respondent.*