LOLA CUNNINGHAM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.
S. B. INGRAM AND JANE INGRAM, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 85421, 87654. Filed October 22, 1962.

*Richard H. Frank, Jr., Esq.*, for the petitioners.
*Robert L. Ackerson, Esq.*, for the respondent.

ATKINS, *Judge:* The respondent determined deficiencies in income tax of petitioner Lola Cunningham and of petitioners S. B. and Jane

Ingram for the calendar year 1957 in the amounts of $495.83 and $1,625.02, respectively.

The issue which is common to each of these consolidated cases is whether a partnership consisting of petitioners Lola Cunningham and S. B. Ingram is entitled to deduct in 1957, the last year of a lease, an amount of $5,000 paid in 1948 as advance rental and applied to rental for 1957.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are incorporated herein by this reference.

Petitioner Lola Cunningham was, during the calendar year 1957, an unmarried individual residing in Nashville, Tennessee. She filed her income tax return for the calendar year 1957 with the district director of internal revenue at Nashville, Tennessee.

Petitioners S. B. Ingram (hereinafter referred to as Ingram) and Jane Ingram are husband and wife residing in Anniston, Alabama. They filed their joint income tax return for the calendar year 1957 with the district director of internal revenue at Birmingham, Alabama. Jane Ingram is a party to this proceeding only because she and her husband filed a joint income tax return for the year 1957.

During 1957 Lola Cunningham and Ingram were equal partners in a partnership known as the King Hotel partnership, which for that year filed an income tax return with the district director of internal revenue at Nashville. From 1947 through August 6, 1956, the partnership interests were as follows: S. B. Ingram, 50 percent; Charles Cunningham (then husband of petitioner Lola Cunningham), 25 percent; and Lola Cunningham, 25 percent. Lola Cunningham inherited Charles Cunningham's 25-percent interest upon his death in August of 1956, thereby making her an equal partner with Ingram.

On May 24, 1948, Ingram and Charles Cunningham, on behalf of the partnership, entered into a lease contract with the King Hotel Company, lessor (sometimes hereinafter referred to as the company), whereby the partnership leased property known as the King Hotel located in Tullahoma, Tennessee, for a term of 120 months (10 years), commencing on June 1, 1948. The lease provided in pertinent part as follows:

The Lessees agree to pay the Lessors for the use of said property $5,000.00 on the execution of this instrument, which monies are to apply to the last year's rent, except in case of destruction of the building by fire or windstorm, in that event the $5,000.00 is to be refunded to the Lessees. The Lessees agree and will pay in advance commencing June 1, 1948, $416.67 per month, and a like sum on the first day of each succeeding month during the term of the lease.

The lease also contained an option whereby the lessee-partnership could continue the lease for an additional period of 120 months.

The partnership paid the $5,000 to be applied to the last year's rent as called for in the lease and operated the hotel from June 1, 1948, through April 14, 1949, making the stated monthly rental payments to the lessor through April of 1949.

On April 14, 1949, the partnership entered into an agreement to subrent the King Hotel to Emmett N. Aylor and Tressie C. Aylor (hereinafter referred to as the Aylors) for a term commencing on April 15, 1949, and extending throughout the original term of the lease between the partnership and the company.

The sublease agreement provided in pertinent part as follows:

> The lessees agree to pay to the lessors, in advance, commencing April 15, 1949, $416.67 per month, and a like sum on the first day of each succeeding month during the term of this lease. * * * Payments will be made to the lessors, who, in turn, guarantee and bind themselves that they will so pay their lessors said rentals, so as to keep the lessees herein in peaceful possession through the term of the lease, provided said lessees comply with all the terms, conditions and provisions of this sub-renting.

As drafted, the sublease agreement contained the following provision, which however was crossed out prior to its execution by the parties:

> Any collateral or deposit made by the lessors herein (the lessees in the original lease) in no way inures to the benefit or usage of the lessees herein; nor do they have any interest therein or any claim thereon, but the same, if any, (and this is by reference to the original lease), belongs to the original lessees, Stanton B. Ingram and Charles H. Cunningham, and shall be accounted for to them exclusively by the original lessors, at such time or times as the original, or basic, lease might provide.

Two memorandum agreements dated April 14, 1949, and relating to the sublease agreement, were executed by Charles Cunningham, on behalf of the partnership and the Aylors. One memorandum agreement stated that for the privilege, right, and contractual obligation of subrenting the King Hotel, the Aylors were to pay $15,000 to their lessors, $5,000 being payable in cash and the balance being evidenced by two notes. The other memorandum agreement, referring to and quoting the portion of the original lease between the company and the partnership providing for the advance rental of $5,000, stated that:

> It is agreed between the parties hereto that if they comply with all the terms, conditions, provisions and requirements, as set forth in the lease of subrenting between Ingram and Cunningham and Emmett N. Aylor and Mrs. Tressie C. Aylor, that when and as this $5,000 is subject to credit upon the rent, or returned to the original lessees (Ingram and Cunningham), that if, as aforesaid, the said Emmett N. Aylor and Mrs. Tressie C. Aylor have complied with all the terms, conditions and provisions and held the said Stanton B. Ingram and Charles H. Cunningham harmless from any claim, that they will be entitled and will receive the credit or refund in the same way and manner that the said Ingram and Cunningham would have received the same, had this subrenting not been so contracted for.

The Aylors paid the $15,000 consideration for the sublease as provided in the memorandum agreement and also paid the stated monthly rental to the partnership to and through May of 1957, although on several occasions they were delinquent in their payment of rent. From May of 1949 through May of 1957, the partnership regularly paid the rental stated in the original lease of $416.67 per month to the company, without regard to receipt of rental payments from the Aylors. The original lessor, the King Hotel Company, did not give its consent to the sublease, there being no provisions in the original lease requiring such consent, and still looked to the partnership for performance of the terms, conditions, and provisions of the original lease.

The partnership did not elect to continue the lease for an additional 120 months. It made no payments of rent to the company after May 6, 1957, and the $5,000 advance rental payment made by it in 1948 was credited on June 1, 1957, against the rent due for the last year of the original lease. Likewise, the partnership received no rental payments from the Aylors for the last year of the sublease.

In its income tax return for the calendar year 1957 the partnership deducted rental expense of $5,000, which represented the advance rental paid in 1948 and credited against the last year's rent on June 1, 1957. The partnership's return for 1957 reflected no income for the year and showed a total loss of $5,580.50, which included the $5,000 deducted as rental expense.

On their respective individual and joint income tax returns for 1957, Lola Cunningham and Ingram deducted the amounts of $2,790.22 and $2,790.28 as their distributive shares of the total partnership loss of $5,580.50.

In the notice of deficiency, the respondent disallowed the deduction of $5,000 claimed as rental expense by the partnership on its return and determined that Lola Cunningham understated her share of partnership income by $2,499.97 and that Ingram understated his share of partnership income by $2,500.03.

OPINION.

The parties appear to be in agreement that the partnership as lessee continued to be liable under the terms of the original rental agreement with the King Hotel Company as lessor, and we think that this is so. There was no novation; the partnership was not required to and did not obtain the consent of the original lessor to sublease the property; the Aylors did not step into the shoes of the partnership and did not become liable for payments of rent to the original lessor; the partnership paid rent directly to its lessor without regard to receipt of rental payments from the Aylors; and the $5,000, which the partnership had originally paid upon the execution of the original lease,

was applied in payment of the rental for the 10th and last year of the lease.

The petitioners contend, therefore, that the partnership was clearly entitled to deduct the $5,000 in 1957 as rental, under section 162 of the Internal Revenue Code of 1954.[1] They contend that the $5,000, representing advance rental paid in 1948, was not deductible at that time, but is properly deductible in the taxable year in which it is applied as rental, namely, the year 1957. The respondent agrees, and we think properly so, that the general rule is that rental paid in advance is deductible only from income of the years in which it is applied as such. Thus, for example, it has been held in a number of cases that where advance rental is paid in one year but is applicable to a number of years of a lease, the advance rental must be allocated and deducted over all the years to which it applies. *Baton Coal Co.* v. *Commissioner*, (C.A. 3) 51 F. 2d 469, certiorari denied 284 U.S. 674, affirming 19 B.T.A. 169; and *Main & McKinney Bldg. Co.* v. *Commissioner*, (C.A. 5) 113 F. 2d 81, certiorari denied 311 U.S. 688, affirming a Memorandum Opinion of this Court. It follows that if the advance rental is applicable to only the last year of a lease, it is deductible only in such last year.

However, the respondent contends that this general rule does not apply under the circumstances of this case. It is his position that $5,000 of the $15,000 paid to the partnership by the Aylors pursuant to the memorandum agreements entered into at the time of the execution of the sublease was to reimburse the partnership for the advance rental paid by the partnership to its lessor and that therefore it is not entitled to the deduction claimed for 1957. He relies upon a number of cases [2] for the proposition that where one pays an amount as expense but is reimbursed therefor or has the right to be reimbursed therefor, no deduction is allowable. However, those cases involved facts in no way resembling those involved here. They involved expenditures made by taxpayers for others pursuant to agreements, express or implied, that they would be reimbursed. That is not true here. Accordingly, those cases are not authority for holding that under the subleasing agreements $5,000 of the amount paid in 1949 constitutes reimbursement to the partnership.

---

[1] Section 162 of the Code provides in part as follows :

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\*         \*         \*         \*         \*         \*         \*

(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

[2] *Universal Oil Products Co.* v. *Campbell,* (C.A. 7) 181 F. 2d 451, certiorari denied 340 U.S. 850 ; *Glendinning, McLeish & Co.* v. *Commissioner,* (C.A. 2) 61 F. 2d 950, affirming 24 B.T.A. 518 ; *Levy* v. *Commissioner,* (C.A. 5) 212 F. 2d 552, affirming a Memorandum Opinion of this Court; and *Estate of Elmer B. Boyd,* 28 T.C. 564.

The sublease between the partnership and the Aylors was a separate and distinct transaction from the lease between the company and the partnership. As stated above, the Aylors did not merely take over the original lease and step into the shoes of the partnership. The sublease agreement required the Aylors to pay monthly rental to the partnership of $416.67 and, although this amount was the same as the rental payable by the partnership to its lessor, it was not merely reimbursement but was subrental payable as such.[3]

Nor do we think that the substance of the transaction in 1949 amounted to the payment by the Aylors to the partnership of $5,000 in reimbursement of the payment which the partnership had made in 1948 to *its* lessor as advance rental. Under the original lease, credit of the $5,000 payment against the partnership's last year's rent was automatic unless the hotel had previously been destroyed by fire or windstorm. Although the agreement between the partnership and the Aylors was that when and as the partnership became entitled to credit of $5,000 upon its rental or entitled to a refund thereof, the Aylors would be entitled to the credit or refund in the same manner that the original lessee would receive the credit or refund, this provision was specifically conditioned on the Aylors' having complied with all conditions of the sublease and their having held the partnership harmless from any claim. It seems to us, therefore, that the Aylors did not merely reimburse the partnership for the $5,000 payment which it had made. Rather, the substance of the transaction was the payment by the Aylors of a deposit of $5,000 primarily as an advance payment of subrental for the last year of the sublease, but also for the purpose of securing the partnership against any claim for damage to the leased property. We attach no significance to the fact that the parties deleted from the sublease a paragraph stating in effect that the payment of $5,000 made by the partnership belonged solely to the partnership. Such deletion certainly could not alter the terms of the lease between the partnership and its lessor under which the $5,000 was to apply automatically in discharge of the partnership's rental obligation for 1957.

We hold that the partnership was not reimbursed for the advance rental paid by it in 1948, and that it is entitled to deduct the $5,000 as rental paid or incurred in the taxable year 1957. It should be added that no issue has been presented as to the taxability, or time of taxability, of the amount of $5,000 paid to the partnership by its sublessee in 1949, and in deciding the issue here presented we are not concerned with that question.

*Decisions will be entered for the petitioners.*

---

[3] On its 1957 income tax return, the partnership did not include as income any of these rental payments received by it from the Aylors in that year and did not deduct the cash payments made by it to the company in that year. We do not pass on the correctness of this treatment, since it is not in issue.