ROBERT E. PETTIT and YULA PETTIT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pettit v. Commissioner
Docket No. 4229-70.
United States Tax Court
T.C. Memo 1973-32; 1973 Tax Ct. Memo LEXIS 254; 32 T.C.M. (CCH) 121; T.C.M. (RIA) 73032; February 8, 1973, Filed Robert E. Pettit, pro se. Jesse T. Mountjoy, for the respondent. TIETJENS
MEMORANDUM FINDINGS OF FACT AND OPINION
TIETJENS, Judge: The Commissioner determined a deficiency in the income tax liability of petitioners for calendar year 1967 in the amount of $2,116.13. The remaining issue for our determination concerns the timing of the deduction of $8,000 paid by petitioner Robert E. Pettit at the commencement of a commercial sublease under which he was to become the tenant. A computation under Rule 50 will be necessary because of a concession made by the parties. 2 FINDINGS OF FACT Some of the facts are stipulated and are so found. The petitioners, Robert E. *255 Pettit and Yula Pettit, are husband and wife and reside at Worthington, Ohio presently. They resided there during the taxable year 1967 and also at the time of filing their petition with the Tax Court in this proceeding. Petitioners filed a joint individual Federal income tax return for the taxable year in issue with the district director of internal revenue at Cincinnati, Ohio. Yula Pettit is a party herein solely by virtue of having made a single return jointly with her husband for that year, and further reference to petitioner below; shall mean only Robert E. Pettit. On or about October 2, 1967, petitioner executed a sublease agreement with one Robert G. Caldwell and Bob Caldwell, Inc., a business located in Columbus, Ohio which was engaged in selling late model (Factory Executive) General Motors cars. The petitioner had been a salesman for Bob Caldwell, Inc. since 1960. In June 1967, petitioner, having formed the intention to go into business for himself, began negotiating with Robert Caldwell for 3 the sublease of the business property where the Bob Caldwell company was located. Robert Caldwell rented the property from one Dr. Bradley for a 5-year term ending July *256 1970 at less than $1,000 per month. Caldwell moved his operation 2 miles to another part of Columbus around September 15, 1967 and there expanded it into a new car distributorship. Upon signing the sublease in October 1967, petitioner became a competitor of Bob Caldwell, Inc. and began selling General Motors late model used cars. In the early negotiations over the sublease, Caldwell envisioned leaving the property vacant for the remainder of 1967 and erecting a large sign indicating the new location of the Caldwell Car company. Petitioner, however, was anxious to occupy the premises as soon as possible after the cessation of the Caldwell operations there. In petitioner's estimation, the property was in a good location for business and the Caldwell company had a good reputation. Furthermore, the office and electrical lighting on the premises probably would be protected from deterioration if petitioner moved in immediately rather than in January 1968. 4 The contracting parties reached an agreed price of $8,000 for the benefit to petitioner of early occupancy. In so doing, Robert Caldwell came down from a higher offer of $15,000, and abandoned his idea of placing a sign *257 on the premises after his departure.Caldwell made it clear in the negotiations leading up to the signing of the sublease that petitioner could forego payment of the $8,000 if petitioner would wait until January to start renting. The term of the sublease would be either 31 months from January 1968 or 34 months from October 1, 1967; and either way the monthly rental would be $1,000. Petitioner took the longer sublease and contracted to pay altogether a consideration of $42,000, $9,000 payable on or before the date of signing. Caldwell left standing on the land an old sign bearing the legend "Bob Caldwell Car Company." Petitioner did not remove the sign, but had it reworded to read "Bob's Car Company." On an attachment to Schedule C of the 1967 return, petitioner claimed rent expenses of $11,000 in connection with his used car business. The Commissioner disallowed $7,294.10 of this expense but allowed a 5 rental expense of the remaining $3,705.90. The latter amount is composed of petitioner's monthly rental at "Bob's Car Company" of $1,000 for each of October, November, and December of 1967 plus $705.90, being the aliquot part of the $8,000 initial payment attributable to *258 those 3 months based on the 34-month term of the sublease. OPINION Petitioner contends that the $8,000 nonrecurring payment constituted rent and therefore was currently deductible in the year paid. He emphasizes the fact that he uses the cash receipts and disbursements method of accounting. While we have no doubt that if the payment was currently deductible in full, then 1967 was the proper taxable year for petitioner to claim it as a deduction. However, we cannot agree with petitioner's contention that he would not be required to amortize the payment simply because he is a cash basis taxpayer. Norman Baker Smith, 51 T.C. 429, 440 (1968). The Commissioner argues that the $8,000 is in the nature either of "a bonus payment, an advance rental or 6 an acquisition cost." Accordingly, he concludes, petitioner may deduct only a portion of the expense in each lease year citing section 162(a) (3)[1] and section 1.162-11(a), Income Tax Regs. The cases dealing with the regulation or its predecessors are numerous and they state that if a lump sum payment constitutes additional consideration for the grant or continuation of a lease then the payment must be amortized over *259 the unexpired term of the lease. University Properties, Inc., 45 T.C. 416, 421, 422 (1966), and the cases cited therein. The only case we have found that would indicate otherwise is the antique Wyoming National Bank of Casper, Wyoming, 23 B.T.A. 408 (1931), which we think is distinguishable on its facts. Petitioner repeatedly characterizes the $8,000 payment herein involved as "additional rental," as did the taxpayer in University Properties, Inc., supra. Here, as in that case, we find it implausible that petitioner would pay a sum so disproportionately large when compared 7 to the stated monthly rent merely for the right to occupy the Caldwell leasehold during the last 3 months of 1967. See also Shutler v. United States, an unreported case ( C.A. 10, 1972, 31 A.F.T.R. 2d 73-, 73-1 U.S.T.C. par. 9145). Rather, payment of this additional consideration strikes us as an expenditure in the nature of a capital expenditure that would benefit petitioner throughout the term of the lease. In any event, we cannot agree with *260 petitioner that the $8,000 constituted additional rental for 1967. We think the Commissioner's reliance on section 1.162-11(a), Income Tax Regs., supra, was correct. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated. ↩