**CAPITOL COAL CORPORATION,**
Petitioner-Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 31, Docket 24573.**

United States Court of Appeals Second Circuit.

Argued Nov. 13, 1957.

Decided Dec. 6, 1957.

Harry Janin, New York City (Joseph H. Crown, New York City, of counsel), for petitioner-appellant Capitol Coal Corp.

Harry Marselli, Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson. David O. Walter, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent Commissioner of Internal Revenue.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and LEIBELL, District Judge.

MOORE, Circuit Judge.

The taxpayer, Capitol Coal Corporation, petitions for review of a decision of the Tax Court (26 T.C. 1183) finding deficiencies in income tax and declared value excess profits tax in the respective amounts of $13,100.27 and $3,958.96 for the fiscal year ended May 31, 1944.

The sole issue is the effect to be given to the cancellation of certain debts in May 1942 and March 1943 by four of the taxpayer's business creditors. The government contends that these cancellations constitute taxable income. The taxpayer argues that the cancellation was not the result of an effort between businessmen to make "the best settlement available"[1] but rather arose from a situation "[w]here a creditor out of the goodness of his heart cancels gratuitously a debtor's indebtedness" (Applt.'s Br. p. 25). As an alternative argument in the event that the court is unwilling to attribute quite so much goodness to the corporate hearts of the creditors, the taxpayer contends that the income resulting from the cancellation of 1942 and 1943 should be set off against losses in 1939. Such a calculation, it argues, would produce taxable income of $2.03 under the tax benefit doctrine.

The taxpayer is a dealer in coal and oil, purchasing from wholesalers and selling to consumers and jobbers. In 1939, because of its poor financial condition, it entered into a written agreement with its principal creditors which provided in part for control by designees of the creditors on its board of directors and liquidation of existing debts at the rate of 2½% per month. However, the taxpayer was unable to meet this commitment and in May 1942, after various settlements had been made with other creditors during 1940 and 1941, it was indebted to the following creditors:

| | |
|---|---|
| George E. Warren Corp..... | $55,538.14 |
| L. F. Kaine & Co........ | 15,951.88 |
| Cities Service Oil Co...... | 24,418.61 |
| Foreston Coal Co......... | 1,000.00 |

I. 26 T.C. 1183, 1191.

The Foreston Coal Company debt arose from a loan. The other debts arose during the period from June 1, 1938, to May 31, 1939, from sales of coal and oil made by the creditors to taxpayer.

In May 1942 George E. Warren Corporation, L. F. Kaine & Company and the taxpayer entered into an agreement whereby the taxpayer was to pay Warren and Kaine by a series of monthly notes $15,000 and $4,307 in full settlement of their respective claims of $55,538.14 and $15,591.88. During the 1942 fiscal year Cities Service Oil Co. had accepted $6,957.27 in full settlement of its claim of $24,418.61 and Foreston Coal Co. had cancelled its debt of $1,000. This $1,000 debt, unlike those owing to the creditors described above, did not result from purchases of inventory but rather from a loan by Foreston which was wholly owned by the brother and sister-in-law of Benjamin Sabsevitz, a co-owner of the stock of the taxpayer. Foreston had no direct business dealings with the taxpayer. Nor did the Commissioner contend that cancellation of this debt resulted in income.

After these settlements the book value of the taxpayer's assets was $75,943.76 against liabilities of $47,906.27. Being solvent to the extent of $28,037.49, the taxpayer reported this amount as gross "Income from cancellation of indebtedness" in its 1942 Federal income tax return. In March 1943 the George E. Warren Corporation cancelled $5,500 of the notes given to it under the May 1942 agreement. The taxpayer did not include this amount as income but showed it as a credit to earned surplus.

In its 1944 return the taxpayer claimed a net operating loss for the fiscal year ending May 31, 1944 and included the $28,037.49 as part of an "Adjusted net operating loss carryover—1942" stating that the cancellation of indebtedness in this amount had been "incorrectly reported as income." The Commissioner disallowed the $28,037.49 deduction and added the $5,500 item as taxable income for 1943, which accounted for the deficiencies found for the fiscal year ending May 31, 1944.

■ The Tax Court found that the creditors negotiated the best settlement available of their claims and that there was lacking any intent, either express or implied, on their part to make a gift of the cancelled portions of the indebtedness.

There is more than sufficient evidence to sustain that finding. The transactions commenced as business dealings, namely, the sale of coal and oil. The efforts to collect their claims, through supervised management from 1937 to 1942, were conducted on a business basis. Even the settlements here in issue, according to the creditors' own testimony, were made to protect their best business interests and to obtain the best possible deal. The fact that the negotiators on both sides were friendly is no evidence that a gift was intended. See Spear Box Co. v. Commissioner, 2 Cir., 1950, 182 F.2d 844, 846; Bradford v. Commissioner, 6 Cir., 1956, 233 F.2d 935, 936–937. Friendship between sellers and purchasers who have been dealing with each other for many years is scarcely an abnormal situation. Nor does the benefit received by the taxpayer from the cancellation carry any connotation of a gift. Naturally the creditors wanted to keep Capitol in business because by so doing the reduced claims might be paid and there would exist a potential customer for coal and oil. The absence of any specific agreement to buy did not alter the possibility of future sales particularly if the friendly relationship were maintained.

Furthermore a gift, even if the representatives of the creditors had the power so to dispose of corporate assets, would be a most unusual occurrence when "made by a company engaged in operating a business for profit" (Commissioner v. LoBue, 351 U.S. 243, 246, 76 S.Ct. 800, 803, 100 L.Ed. 114). See also Commissioner v. Jacobson, 336 U.S. 28, 51, 69 S.Ct. 358, 93 L.Ed. 477. As the testimony indicates the creditors' representatives, if called upon by their own

**364**

employers to justify their actions, would have advanced sound business reasons in support of the cancellations.

 The taxpayer's argument that the cancellations constituted a contribution to capital is without merit. They were not so intended. The supervisory control exercised through representation on Capitol's board of directors did not create a proprietary interest.

 If not a gift, as it clearly is not, the taxpayer argues that since it had losses of $69,642.23 in 1939, from which it derived no tax benefit that the 1942 cancellation of $69,644.36 should be regarded as a recovery on account of losses, leaving only $2.03 as income. The taxpayer relies on the so-called tax benefit rule which permits exclusion from gross income of amounts recovered on losses deducted in former years which did not reduce taxes in such years. This rule, a limited exception to the well established fixed annual accounting period principle (Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 286–287, 64 S.Ct. 596, 88 L.Ed. 725; Burnet v. Sanford & Brooks Co., 282 U.S. 359, 364–365, 51 S.Ct. 150, 75 L.Ed. 383) must be strictly applied. Where the recovery can be definitely related to the loss the courts have permitted a taxpayer to have a tax benefit but here there is no such fact prerequisite. In 1939 Capitol's net sales were $982,406.23 and its cost of goods sold was $811,769.91 including in addition to purchases of coal and oil such items as freight, towing, boating and insurance. At best the taxpayer has shown that purchases were made in 1939 but it has not related the alleged 1942 recovery to the 1939 losses. Even were this court to take judicial notice, as the taxpayer requests, that business is a "complex mechanism" this assumption would not excuse the taxpayer from the necessity of specifically relating recovery to loss if it would have the benefit of the exception.

The Tax Court's decision is an accurate application of the law to the facts and it is affirmed.