OPINION Much of petitioners’ evidence in this case is devoted to bringing out the circumstances surrounding the issuance of the certificates by the hospital. It seems that in 1957 the Lakeside Hospital Association began to formulate plans for the construction of a new hospital to replace the old one which was considered inadequate. Lakeside decided to issue mortgage bonds as one of the methods of financing this new construction. To do this it needed someone to underwrite the bonds. In 1962 Lakeside agreed with B. C. Ziegler & Go. on the terms of a commitment whereby Ziegler would underwrite the bonds to be issued by Lakeside. One of the conditions of this commitment required the procurement of not less than $200,000 from the members of the staff of Lakeside. In order to meet this condition, the board of trustees of Lakeside met on May 16, 1962, and unanimously passed a resolution which called for the assessment of a fee from each member of the staff as a condition to remaining on the staff. It was thought that such an assessment would result in a business expense deduction for those persons who paid it. There was concern, however, as to whether a business expense deduction would be allowed. It was agreed that the check paid pursuant to the resolution would be held by Lakeside until the tax consequences of this arrangement could be worked out. A revenue ruling was requested and at an oral conference with the Internal Revenue Service in Washington, L.C., it was learned that an adverse ruling would be issued which would disallow the staff fee as a business expense deduction. With a business deduction ruled out, petitioners sought to convert their staff assessments into charitable contributions. A new plan was devised by Lakeside whereby each member of the staff would receive certificates entitled “Ron-Negotiable Participation Debenture,” such as set forth in our Findings of Fact in return for the money he had paid to Lakeside as his staff assessment fee pursuant to the resolution of May 16, 1962. The debentures were issued to the members of the staff with the approval of B. C. Ziegler & Co. in the aggregate amount of $201,000. This plan was designed to accomplish a charitable deduction for each member when he would surrender the debentures to Lakeside for cancellation. The petitioners herein were issued debentures in the face amount of their staff assessments. Later they surrendered their debentures and took charitable deductions in the face amount of the debentures surrendered under section 170, which allows as a deduction “any charitable contribution * * * payment of which is made within the taxable year.” The material facts in this case are almost identical with the facts in S. M. Howard, 39 T.C. 833 (1963), and Glenn L. Heigerick, 45 T.C. 475 (1966). In these cases there were no debentures issued but, as here, a group of osteopathic doctors were compelled to pay staff assessments in order to be members of the hospital staff. In the cited cases the doctors sought deduction of the sums they paid by way of staff assessments as business expenses. We held in both cases the doctors were not entitled to deduct the expenditures in the year paid as business expenses. We said the expenditures constituted capital expenditures amortizable over a period of years in that they in effect secured staff privileges for as long as the doctors would probably practice. Petitioners in the instant case, however, make no argument that they are entitled to a business expense deduction. And they do not contend that what they paid as staff assessments should be treated as capital expenditures. Their only contention is as stated on brief that “The charitable contribution arises not with the purchase of the participating debentures but instead with its subsequent contribution, through surrender to Lakeside.” There is no doubt that the surrender of a debt for cancellation can constitute a gift or contribution. See Helvering v. American Dental Co., 318 U.S. 322 (1943); Capitol Coal Corporation, 26 T.C. 1183 (1956), aff'd. 250 F. 2d 361 (C.A. 2, 1957); Nelson Story III, 38 T.C. 936 (1962). But it must be a valid, bona fide, enforceable debt before it can be considered the subject matter of a gift or contribution. The courts have long held that a bona fide debt exists only when it is based on an actual debtor-creditor relationship and that such a relationship exists only when there is an unconditional obligation on the part of the debtor to pay the creditor, Zimmerman v. United States, 318 F. 2d 611 (C.A.9, 1963); W. S. Gilman, 18 B.T.A. 1277 (1930), affd. 53 F. 2d 47 (C.A.8, 1931), and Bercaw v. Commissioner, 165 F. 2d 521 (C.A.4, 1948), affirming a Memorandum Opinion of this Court. It requires nothing more than a cursory reading of the debenture to see that it contains no such unconditional obligation to pay. The certificates entitled “Ron-Negotiable Participation Debenture” are excellent examples of nondebentures. The printed certificates are impressive looking. They are loaded with words of obligation with, however, concomitant words of limitation and restriction that strip the documents of all value as certificates of any indebtedness. The surrender of such worthless pieces of paper for cancellation was a meaningless gesture on the part of petitioners. They acquired no enforceable rights by virtue of the certificates being issued to them and they gave up no enforceable rights when they gave them back to the hospital. It is enough to say the so-called debentures do not evidence a debt and their staff assessments are not converted into charitable deductions by the surrender of such worthless documents. Decisions will he entered for the respondent.