ARLINGTON METAL INDUSTRIES, INC. (SUCCESSOR TO ARLINGTON TEXAS INDUSTRIES, INC.), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5830-68. Filed December 2, 1971.

*John O. Jones*, for the petitioner.
*D. Ronald Morello*, for the respondent.

#### OPINION

DAWSON, *Judge:* Respondent determined the following deficiencies in petitioner's Federal income taxes:

| Taxable year ended | Amount |
| --- | --- |
| Mar. 31, 1966 | $1, 693. 64 |
| Mar. 31, 1967 | 10, 225. 44 |

As contained in the stipulation of facts, various adjustments made in respondent's notice of deficiency have been resolved by agreement of the parties and can be given effect in the Rule 50 computation. Two issues remain for our decision: (1) Did petitioner realize taxable income of $33,420.24 in its taxable year ended March 31, 1966, when it received 1,368 shares of its stock? (2) Did petitioner correctly include in its income for the taxable year ended March 31, 1966, the amount of $17,556.06 which represented canceled liabilities to it?

All of the facts are stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The pertinent facts are summarized below.

Arlington Metal Industries, Inc. (herein called petitioner), is a Delaware corporation which had its principal place of business in Arlington, Tex., when it filed its petition in this proceeding. Petitioner

is the successor to Arlington Texas Industries, Inc. (herein referred to as Arlington Texas). The U.S. corporation income tax returns of Arlington Texas for the taxable years ended March 31, 1966, and March 31, 1967, were filed with the district director of internal revenue at Dallas. Tex.

Arlington Texas was chartered on April 9, 1952, with authorized stock of 1,000 shares at $10 par, of which 500 shares were subscribed to and issued, making a total initial capitalization of $5,000. On February 20, 1959, the capital stock was increased to 3,000 shares, at $10 par, with a total capital of $30,000.

As of March 31, 1965, the stockholdings of Arlington Texas were as follows:

|  | Shares |
| --- | --- |
| A. O. Olson | 1, 632 |
| William Boustead | 684 |
| Holly Wilmoth | 684 |
| Total shares outstanding | 3, 000 |

In February 1960, when A. O. Olson purchased 1,500 shares of Arlington Texas, the book value of Arlington Texas was $26.50 per share.

In June 1964, A. O. Olson purchased 132 shares of Arlington Texas from William Boustead and Holly Wilmoth (66 shares from each) for $31.74 per share.

In early 1965 the majority stockholder of Arlington Texas, A. O. Olson, caused certain investigations to be made of William Boustead and Holly Wilmoth, who had previously managed and conducted the operations of Arlington Texas, for alleged mismanagement and possible theft of scrap metal.

On May 11, 1965, William Boustead and Holly Wilmoth were terminated as officers and employees of Arlington Texas. At the time of the termination the following amounts were due them from Arlington Texas:

| | | |
| --- | --- | --- |
| Notes payable—Holly Wilmoth | | $6, 580. 79 |
| Accounts payable—Holly Wilmoth | | 874. 22 |
| Accrued interest | | 567. 14 |
| Net amount due from William Boustead | | (416. 09) |
| | | 7, 606. 06 |
| Accrued and unpaid salary—Boustead | $4, 975 | |
| Accrued and unpaid salary—Wilmoth | 4, 975 | |
| Total accrued salaries | | 9, 950. 00 |
| Total payables to stockholders | | 17, 556. 06 |

William Boustead and Holly Wilmoth were personally liable on a note of Arlington Texas payable to A. O. Olson in the original amount of $27,918.50, with a balance as of March 31, 1965, of $23,090.03.

On March 31, 1965, the book value of the 3,000 shares of stock of Arlington Texas was $24,580.15.

In July 1965 the book value of the stock of Arlington Texas was substantially the same as it was on March 31, 1965.

On May 31, 1965, a document entitled "Mutual Release" was executed by A. O. Olson, both as president of Arlington Texas and individually, and by William Boustead and Holly Wilmoth, which provided, in pertinent part, as follows:

WHEREAS, William Boustead and Holly Wilmoth, both of Tarrant County, Texas, are former officers and directors of Arlington Texas Industries, Inc., a corporation, and each is now the owner of 684 shares of the capital stock of said corporation; and

WHEREAS, said Arlington Texas Industries, Inc. is indebted to both William Boustead and Holly Wilmoth in various sums as reflected by the books and records of said corporation; and

WHEREAS, *since May 11, 1965, Arlington Texas Industries, Inc. has asserted certain claims against the said William Boustead and Holly Wilmoth, which claims arise out of the management and operation of Arlington Texas Industries, Inc. during the period of time that the said William Boustead and Holly Wilmoth were officers and directors of said corporation; and*

WHEREAS, William Boustead and Holly Wilmoth and Arlington Texas Industries, Inc. *have agreed to compromise and settle all disputes and controversies as well as any and all debts, obligations, claims, demands or causes of action* which may or might now be asserted by William Boustead and Holly Wilmoth against Arlington Texas Industries, Inc. or by Arlington Texas Industries, Inc. against the said William Boustead or Holly Wilmoth;

Now, THEREFORE, William Boustead and Holly Wilmoth do each hereby *bargain, sell and deliver* to Arlington Texas Industries, Inc., a corporation, 684 shares of the capital stock of said Arlington Texas Industries, Inc. and the said William Boustead and Holly Wilmoth do agree to release and by these presents do *release, cancel and relinquish* to Arlington Texas Industries, Inc. all debts, obligations, claims, demands and causes of action now owned, held or claimed by the said William Boustead and Holly Wilmoth against Arlington Texas Industries, Inc. and *in consideration therefor, Arlington Texas Industries, Inc. agrees to release, and does by these presents, release, cancel and relinquish unto the said William Boustead and Holly Wilmoth, all debts, obligations, claims, demands and causes of action, now owned, held or claimed by said Arlington Texas Industries, Inc. against the said William Boustead and Holly Wilmoth.*

*It is the intention of William Boustead, Holly Wilmoth and Arlington Texas Industries, Inc. that this is and shall be a full, final and complete settlement of* all disputes and controversies as well as all debts, obligations, claims, demands and causes of action now existing or which could, may or might exist, in favor of the said William Boustead and Holly Wilmoth against said Arlington Texas Industries, Inc., or in favor of said Arlington Texas Industries, Inc. against the said William Boustead and Holly Wilmoth.

[Emphasis added.]

For the taxable year ended March 31, 1966, Arlington Texas treated the 1,368 shares of stock received from William Boustead and Holly Wilmoth, pursuant to the Mutual Release, as contributed surplus.

For the taxable year ended March 31, 1966, Arlington Texas included the $17,556.06 of indebtedness to William Boustead and Holly Wilmoth, which had been surrendered by them to Arlington Texas pursuant to the Mutual Release, as miscellaneous income—by decreasing expenses.

For the taxable year ended March 31, 1966, Arlington Texas deducted the $25,561.73 expended for the investigations and removal of William Boustead and Holly Wilmoth. No criminal or civil proceedings were ever instituted against William Boustead and Holly Wilmoth growing out of these investigations.

On July 6, 1965, Arlington Texas sold the 1,368 shares of its stock, received from William Boustead and Holly Wilmoth pursuant to the Mutual Release, to A. O. Olson for $13,680.

On August 15, 1965, A. O. Olson sold the 1,368 shares of stock to the two new managing employees of Arlington Texas for $13,680, and received notes from these new employees for the purchase price of the stock.

On August 25, 1966, A. O. Olson reacquired the 1,368 shares of stock of Arlington Texas from the new employees.

On March 31, 1967, A. O. Olson sold his stockholdings (3,000 shares) in Arlington Texas for $145,000.

On March 31, 1967, petitioner acquired all of the stock of Arlington Texas and adopted a plan for complete liquidation of Arlington Texas equal to the acquisition price of the stock, i.e., $145,000.

Arlington Texas was not insolvent either before or after Boustead and Wilmoth canceled liabilities due them.

The fair market value of the 1,368 shares of stock received by Arlington Texas was not less than $33,420.24, or $24.43 per share.

1. *Receipt by Arlington Texas of its own stock from Boustead and Wilmoth.*—Petitioner contends that its receipt of 1,368 shares of stock was a gratuitous contribution to its capital. This contention is premised upon the argument that no legally enforceable obligation to pay was present and thus no debtor-creditor relationship existed between the corporation and the two shareholders in connection with this stock transfer. Therefore, petitioner argues that section 311(a),[1] I.R.C. 1954,

---

[1] SEC. 311. TAXABILITY OF CORPORATION ON DISTRIBUTION.

(a) GENERAL RULE.—Except as provided in subsections (b) and (c) of this section and section 453(d), no gain or loss shall be recognized to a corporation on the distribution, with respect to its stock, of—

    (1) its stock (or rights to acquire its stock), or

    (2) property.

is applicable and no gain or loss should be recognized by Arlington Texas on the transfer of its stock. Respondent argues that there was no voluntary or gratuitous surrender of stock and that the receipt of this stock constituted taxable income to Arlington Texas.

Petitioner's argument that the mutual release agreement entered into by Boustead, Wilmoth, and Arlington Texas did not provide the corporation with an uncontested right to any income has been the subject of judicial review numerous times in the past. See *Arcadia Refining Co.* v. *Commissioner*, 118 F.2d 1010 (C.A. 5, 1941) ; *Braddock* v. *United States*, 434 F.2d 631 (C.A. 1970) ; and *Spangler* v. *Commissioner*, 323 F.2d 913 (C.A. 9, 1963), affirming a Memorandum Opinion of this Court.

As we stated in *Sager Glove Corporation*, 36 T.C. 1173, 1180 (1961), affd. 311 F.2d 210 (C.A. 7, 1962) :

The taxability of the proceeds of a lawsuit, or of a sum received in settlement thereof, depends upon the nature of the claim and the actual basis of recovery. If the recovery represents damages for lost profits, it is taxable as ordinary income. However, if it represents a replacement of capital destroyed or injured, the money received, to the extent it does not exceed the basis, is a return of capital and not taxable. *United States* v. *Safety Car Heating Co.*, 297 U.S. 88; *Phoenix Coal Co.* v. *Commissioner*, (C.A. 2) 231 F. 2d 420; *Durkee* v. *Commissioner*, (C.A. 6) 162 F.2d 184; *Raytheon Production Corp* v. *Commissioner*, (C.A. 1) 144 F.2d 110, certiorari denied 323 U.S. 779; *Swastika Oil & Gas Co.* v. *Commissioner*, (C.A. 6) 123 F.2d 382, certiorari denied 317 U.S. 639; *Arcadia Refining Co.* v. *Commissioner*, (C.A. 5), 118 F.2d 1010; *Liebes & Co.* v. *Commissioner*, (C.A. 9) 90 F.2d 932; *Estate of Mable K. Carter*, 35 T.C. 326, on appeal (C.A. 8) ; *Ralph Freeman*, 33 T.C. 323; *Chalmers Cullins*, 24 T.C. 322; and *Telefilm, Inc.*, 21 T.C. 688.

Here the claims asserted against Boustead and Wilmoth arose as a result of their alleged failure to pay over to the corporation certain moneys obtained in connection with the sale of its scrap metals. The transfer of 1,368 shares of stock to Arlington Texas terminated the interests of Boustead and Wilmoth in the corporation and was made in exchange for the release of "all debts, obligations, claims, demands and causes of action now owned, held or claimed," by the corporation against them. It is clear that this stock was employed as a means of payment in settling the corporation's claims for damages and, accordingly, resulted in the realization of income by the corporation. *Commissioner* v. *S. A. Woods Machines Co.*, 57 F.2d 635 (C.A. 1, 1932), certiorari denied 287 U.S. 613 (1932) ; *Houghton & Dutton Co.*, 26 B.T.A. 52 (1932).[2]

---

[2] See Watts, "Recognition of Gain or Loss to a Corporation on a Distribution of Property in Exchange for its Own Stock, 22 Tax Lawyer 161 (1968) ; Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, par. 7.21, p. 7–41 (3d ed. 1971).

2. *Release of claims by Boustead and Wilmoth against Arlington Texas for accrued salaries, accrued interest, notes payable, and accounts payable.*—Petitioner contends that it incorrectly reduced its expenses for the fiscal year ended March 31, 1966, by treating the release of the above claims, totaling $17,556.06, as an offset against its accrued expenses for that fiscal year. Petitioner argues that the release of these claims by Boustead and Wilmoth was gratuitous and constituted a contribution to the capital of Arlington Texas in the amount of $17,556.06. Respondent takes the position that the release in question resulted in income from the discharge of indebtedness to petitioner.

Section 61, I.R.C. 1954, provides that gross income includes, among other things, income derived from business and income from the discharge of indebtedness. Section 1.61–12, Income Tax Regs., provides:

(a) *In general.* The discharge of indebtedness, in whole or in part, may result in the realization of income. If, for example, an individual performs services for a creditor, who in consideration thereof, cancels the debt, the debtor realizes income in the amount of the debt as compensation for his services. A taxpayer may realize income by the payment or purchase of his obligations at less than their face value. In general, if a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation to the extent of the principal of the debt.

The nub of this issue is whether the forgiveness of the indebtedness by Boustead and Wilmoth was voluntary or gratuitous. We agree with respondent's contention that the action of Boustead and Wilmoth in canceling Arlington Texas' indebtedness to them was in no way voluntary or gratuitous. See *Capitol Coal Corporation*, 26 T.C. 1183 (1956), affd. 250 F.2d 361 (C.A. 2, 1957). Boustead and Wilmoth were forced out. They gave up accrued salaries, notes received from the corporation, and their positions as officers, directors, and salaried employees of the corporation. Arlington Texas, in turn, relinquished its claims against them for "milking" the profits of the corporation. Indeed, no evidence has been offered by petitioner indicating that anything other than a negotiated release was effected by this transaction. Thus, we conclude that Arlington Texas realized taxable income on the cancellation of its indebtedness to Boustead and Wilmoth. See and compare *Arcadia Refining Co.* v. *Commissioner, supra; Pacific Magnesium* v. *Westover*, 86 F. Supp. 644 (S.D. Calif. 1949), affd. 183 F.2d 584 (C.A. 9, 1950); and *Sager Glove Corporation, supra.* See also 1 Mertens, Law of Federal Income Taxation, sec. 6A.12 (1969 rev.).

To reflect the agreement of the parties and the conclusions reached herein on the disputed issues,

*Decision will be entered under Rule 50.*