CONSOLIDATED FOODS CORPORATION, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4650-74.    Filed June 14, 1976.

Paul W. Clevenger (an officer), for the petitioner.
*Harmon B. Dow,* for the respondent.

OPINION

WILES, *Judge:* Respondent determined deficiencies in the income taxes of Conso Fastener Corp. (hereinafter Conso) as follows:

| FYE June 30— | Amount |
|---|---|
| 1967 | $3,500 |
| 1968 | 55,517 |
| 1969 | 35,757 |
| Total | 94,774 |

Petitioner is a transferee of Conso and thereby is liable for any taxes determined to be due from Conso. The only issue for decision is whether Conso correctly computed its rental deductions under section 162(a)(3)[1] by properly crediting surplus industrial bond proceeds against lease payments which originated in the underlying industrial development bonds.

This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure.

Petitioner, a Maryland corporation, had its principal office in Chicago, Ill., from 1966 through 1969 and when it filed its petition herein. On or about February 1, 1967, petitioner acquired Conso, a New York corporation from 1966 through 1969. The deficiencies in issue relate to the business of Conso during taxable years ended June 30, 1967, June 30, 1968, and June 30, 1969, for which Conso timely filed corporate income tax returns with the District Director of Internal Revenue, New York, N.Y. Petitioner liquidated Conso and received its assets in 1971.

Conso was an accrual basis taxpayer at all relevant times.

Union Realty Corp. (hereinafter Union), a South Carolina corporation, was an affiliated sister corporation of Conso prior to 1967. At some time before 1967, Union conveyed certain real estate in Union County, S.C., to the Industrial Development Corp. of Union County, S.C. (hereinafter Industrial), a nonprofit corporation which had as its purpose stimulation of industrial development in Union County. The consideration for this conveyance was $5,000, plus Industrial's promise to provide construction funds for a manufacturing plant on that land, plus Industrial's promise to lease the plant and land to Conso.

---

[1] Statutory references are to the Internal Revenue Code of 1954, as amended.

On June 13, 1967, Industrial executed an indenture with the Citizens & Southern National Bank of South Carolina to secure a $2 million bond issue, the proceeds of which were to be used for construction of a manufacturing plant. On that same date, Industrial and Conso entered into a lease under which Conso would rent the land and manufacturing plant to be constructed by Industrial for 25 years, beginning January 1, 1967.

Plant construction was completed in the fall of 1967, and Conso took possession on or about October 18, 1967. Conso used the plant from the date of possession and at all relevant times thereafter as a manufacturing facility.

The lease agreement between Industrial and Conso provided, in part, as follows:

Upon the completion of such manufacturing building * * * and the payment of all costs and expenses therefor payable from the proceeds of the Series A Bonds, any surplus of such bond proceeds shall be disbursed for the purposes and in the manner provided in the Indenture.

The Lessee agrees that in the event the cost of such construction exceeds the amount derived from the sale of the Series A Bonds, it will pay all costs in excess of such amount.
* * *

This Lease shall, upon the expiration of the Original Term, be automatically renewed or extended for not exceeding four (4) additional terms of 5 (five) years each unless and until notice be given in writing by the Lessee * * *
* * *

In no event shall the monthly rental to be paid by Lessee during any renewal term be less than a rental based upon the fair market value of the Leased Premises at the time of the renewal of such term. * * *
* * *

*Section 4.01.* Lessee will pay to Lessor * * * the net basic rental (hereinafter called the "Basic Rent") for the periods, in the amounts and at the times set forth in Schedule B attached hereto * * * The Basic Rent shall be absolutely net to Lessor * * * so that this Lease shall yield the Basic Rent net to Lessor throughout the Original Term.
* * *

When all of the Bond Indebtedness shall have been paid in full, both as to principal and interest, any money remaining in the various accounts created by the Indenture shall be paid to the Lessee * * *
* * *

*Section 4.04.* * * * so long as any part of the Bond Indebtedness is outstanding and unpaid the Basic Rent * * * shall continue to be payable in all events [e.g., condemnation, loss, or destruction] and the obligations of Lessee hereunder shall continue unaffected * * *

Schedule B of the lease agreement provided for the following lease payments during the years in issue:

| Year ending Dec. 31— | Payment due June 15 | Payment due Dec. 15 | Total payments during year |
|---|---|---|---|
| 1967 | $59,000 | $59,000 | $118,000 |
| 1968 | 59,000 | 99,000 | 158,000 |
| 1969 | 57,820 | 97,820 | 155,640 |

The indenture between Industrial and the Citizens & Southern National Bank of South Carolina provided, in part, as follows:

*Section 3.02.* * * *

The Company [Industrial] shall deposit with the Trustee [the Citizens & Southern National Bank of South Carolina] all of the proceeds from the sale of the Series A Bonds * * * and the Trustee shall out of such proceeds:

(a) Deposit to the credit of the Interest Account * * * the accrued interest on the Series A Bonds from their date to the date of their delivery plus an amount which when added to said accrued interest will equal $59,000. It is understood that the amount so deposited shall constitute a credit to Conso Fastener Corporation on the next succeeding payment or payments of Basic Rent due or to become due under the Conso Lease and such reduction in rental shall be agreed to by the Trustee.

(b) Pay upon the written order of the Company * * *:

(i) The payment of the cost of construction of the manufacturing plant * * *

(ii) Any surplus remaining after making the payments specified in subparagraph (i) of this paragraph (b) shall be * * * disbursed by it pursuant to the terms of Section 4.04 of this Indenture.

* * *

*Section 4.03.* * * *

The Trustee may * * * establish such accounts as it deems desirable for [holding] * * * moneys obtained from Conso Fastener Corporation as prepayments of rent, until such time as such amounts are used in full pursuant to the terms of the Conso Lease or of this Indenture.

*Section 4.04.* Moneys remaining after the construction of the manufacturing plant * * * shall * * * be deposited by the Trustee in the Revenues Account and shall constitute a credit to Conso Fastener Corporation on the next succeeding payment or payments of Basic Rent due or to become due under the Conso Lease.

* * *

*Section 4.06.* All moneys held by the Trustee may be invested and reinvested by the Trustee at the direction of Conso Fastener Corporation * * *. Any interest, profit or loss on such investments shall be credited or charged to the Revenues Account. It is understood that * * * moneys so credited to the Revenues Account are to constitute a credit to Conso Fastener Corporation on the next succeeding payment or payments of Basic Rent and such reduction in Basic Rent shall be agreed to by the Trustee. * * *

* * *

*Section 5.05.* * * *

[Under certain circumstances] the Trustee shall hold moneys available for the redemption of a particular [bond] series * * *. Moneys so held by the Trustee shall be invested and reinvested by the Trustee in general obligations of the

United States of America \* \* \* and any interest, profit, or loss on such investments shall be credited or charged to the Revenues Account. It is understood that \* \* \* moneys so credited to the Revenues Account are to constitute a credit to Conso Fastener Corporation on the next succeeding payment or payments of Basic Rent and such reduction in Basic Rent shall be agreed to by the Trustee.

Industrial received $2 million in proceeds from the bond issue. The lower than anticipated actual cost of constructing the manufacturing plant, $1,821,494, resulted in a surplus of $178,506 in bond proceeds, which was credited against basic rent as follows:

| Basic rent due date | Credit against basic rent | Balance due from Conso |
|---|---|---|
| June 15, 1967 _____ | $59,000 | 0 |
| Dec. 15, 1967 _____ | 0 | $59,000 |
| June 15, 1968 _____ | 59,000 | 0 |
| Dec. 15, 1968 _____ | 60,506 | 38,494 |
| June 15, 1969 _____ | 0 | 57,820 |

On its corporate income tax return for the taxable year ended June 30, 1967, Conso did not claim a deduction for rent under the lease. On its corporate income tax return for the taxable year ended June 30, 1968, Conso deducted $163,612 for rent under the lease, computed by subtracting a credit of $13,388 from the sum of three $59,000 payments due on June 15, 1967, December 15, 1967, and June 15, 1968. On its corporate income tax return for the taxable year ended June 30, 1969, Conso deducted $147,895 for rent under the lease, computed by subtracting a credit of $8,925 from payments due of $57,820 for June 15, 1968, and of $99,000 for December 15, 1968.

Conso had no economic interest in the manufacturing facility beyond the original 25-year term of the lease, other than renewal rights based upon a fair rental value. Conso had no right or duty to acquire an equity interest in the facility at any time.

We first must decide whether Conso was entitled to deduct the full amounts of basic rent as they became due. The amount of rental deductions properly accrued by Conso, an accrual basis taxpayer, in turn depends upon how credits resulting from surplus bond proceeds should be applied to those lease payments.

Petitioner contends that Conso committed itself to a 25-year obligation. Thus, Conso should deduct in each lease year an allocable part of that total commitment, reduced pro rata by an allocable part of the surplus bond proceeds credit for each lease year. Petitioner accordingly asserts that the full basic rent due

each year is deductible, except for a reduction equal to $\frac{1}{25}$ of the surplus bond proceeds credit. This is essentially how petitioner treated this transaction on its income tax returns for the years in issue.[2]

In support of this "total commitment" theory, petitioner argues that the "lease" payments were not in fact related to specific occupancy periods, as illustrated by Conso's obligation to make these payments notwithstanding condemnation or destruction of the plant or other circumstances which would render the plant unusable.

Respondent, on the other hand, asserts that Conso should deduct only basic rent payments that were not satisfied by surplus bond proceeds credits, as liabilities could not have accrued for rents reduced by those credits. In other words, Conso's rental liability was fixed at the basic rent less any possible credits which might arise.

We believe Conso should be allowed to fully deduct all amounts which accrued as basic rent, notwithstanding the surplus bond proceeds credits. For an accrual basis taxpayer such as Conso to deduct rental payments under section 162(a)(3),[3] it must be shown that "all the events have occurred which establish the fact of the liability giving rise to such deduction and the amount thereof can be determined with reasonable accuracy." Sec. 1.446-1(c)(1)(ii), Income Tax Regs. Resolution of the proper liability to be deducted in this case turns on how Conso's rental liability is defined: if its rental liability is defined as the basic rent payments due, then the amount of each such payment is fully deductible; if its rental liability is defined as the basic rent payments due less any contingent credits which might arise, as respondent contends, then the deduction would of course be reduced to the extent of such credits, resulting in a net deduction.

---

[2] Petitioner has, of course, contended here that Conso was entitled to deduct basic rent in 1967, notwithstanding Conso's failure to deduct any such rent on its 1967 income tax return.

[3] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

    * * *

    (3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

We believe the key to defining Conso's rental liability is in turn determined by examining the relationship of the possible credits to basic rent payments. Credits could arise from four sources: (1) Surplus bond proceeds not needed for the cost of construction were to be credited to the next basic rent payment due, as here; [4] (2) $59,000 of bond proceeds, consisting in part of accrued interest on the bonds, were to be set aside and were to be credited to the next basic rent payment due under section 3.02 of the indenture; (3) profits from investments of certain moneys held by the trustee were also to be credited against the next basic rent payment due under section 4.06 of the indenture; and (4) profits from investments of bond redemption funds held by the trustee were also to be so credited under section 5.05 of the indenture. It is immediately apparent with respect to the last three credits described that they bear no relation whatsoever to the lease in issue or the parties' obligations thereunder. They are purely random adjustments in Conso's favor which are being offset for cash-flow purposes as bookkeeping entries against basic rent cash due. A true rental liability—which we believe this to be, in both form and substance—is not contingent upon investment returns from an unrelated account. That the surplus bond proceeds credits here in issue arose near inception of the lease does not change their similarity to these other credits: the surplus bond proceeds credits did not originate in the parties' obligations under the lease, they did arise from the entirely unrelated cost of constructing the plant, and they were used as bookkeeping entries to avoid the needless charade of Industrial receiving cash payments for basic rent from Conso and then paying cash payments back to Conso for whatever credits might arise. This procedure also had the virtue, from Industrial's viewpoint, of safeguarding cash funds in the trustee's accounts until basic rent payments became due, thereby precluding loss of such funds while under Conso's control.

In sum, we do not view Conso's rental liabilities as variable, depending on what credits might arise; rather, rental liabilities were fixed by the basic rent schedule, and any credits—all of which were unrelated to actual occupancy of the property— merely constituted a method of properly reflecting random adjustments in Conso's favor. Conso was obligated to make

---

[4] There is no evidence in the record that credits other than this type have in fact arisen.

definite, semiannual rental payments to Industrial, whether or not various contingencies might result in credits to reduce the actual cash Conso would have to pay directly. As each basic rent payment became due, all events had occurred which established the fact of liability, and the amount of the liability was a fixed sum, accurately determinable. That the liability could be satisfied by credits resulting from various contingencies—of which there were four—did not change Conso's obligation to discharge or Industrial's right to satisfaction of the liability in full. We accordingly believe Conso had accrued a liability on each basic rent payment date and was then entitled to deduct each full basic rent payment as it accrued.

The case of *Your Health Club, Inc.,* 4 T.C. 385, 389-390 (1944), is analogous on this point. In that case an accrual basis taxpayer received a credit against rent due for improvements it made as lessee to the rented property. We held that the full rent due accrued and was deductible, notwithstanding that a lower cash payment was made to the lessor because of the improvements credit. Although the taxpayer in that case was a direct source of the credit, rather than an indirect source as here, the logic underlying allowance of the full rental deduction is the same. We accordingly hold that Conso was entitled to deduct the full amounts of the basic rent payments due.

The parties' contentions to the contrary are unpersuasive. Petitioner's contention that Conso assumed a commitment to pay the full amount of lease payments over 25 years and that the full commitment should be reduced by the surplus bond proceeds and then prorated over the lease term more aptly describes the proper tax treatment for a purchased leasehold than for a lease. Cf. *Oscar L. Thomas,* 31 T.C. 1009, 1012 (1959). Indeed, petitioner cites section 1.162-11(a), Income Tax Regs.,[5] which applies to purchased leaseholds, in support of this argument. We cannot agree that the lease obligation should be regarded for tax purposes as a "total commitment" or that the lease is anything other than what it purports to be. The agreement uses leasing vocabulary throughout, lease payments are to be made "for the periods * * * set forth in Schedule B," and there is no support in

---

[5] That regulation provides, in part, as follows:

If a leasehold is acquired for business purposes for a specified sum, the purchaser may take as a deduction in his return an aliquot part of such sum each year, based on the number of years the lease has to run.

the record for distinguishing the lease agreement from a traditional lease. As to petitioner's emphasis on Conso's continued obligation to make payments under the agreement notwithstanding condemnation, casualty loss, or other unusability of the facility, we note that condemnation awards, insurance proceeds, or other recoveries were generally to be applied to Conso's remaining lease obligations. Furthermore, "a taxpayer must normally accept the tax consequences of the way in which he deliberately chooses to cast his transactions." *Sterno Sales Corp. v. United States,* 345 F.2d 552, 554 (Ct. Cl. 1965).

Petitioner also relies on *Southwestern Hotel Co. v. United States,* 115 F.2d 686 (5th Cir. 1940), cert. denied 312 U.S. 703 (1941); *Main & McKinney Bldg. Co. v. Commissioner,* 113 F.2d 81 (5th Cir. 1940), affg. a Memorandum Opinion of the Board of Tax Appeals, cert. denied 311 U.S. 688 (1940); and *University Properties, Inc.,* 45 T.C. 416 (1966), affd. 378 F.2d 83 (9th Cir. 1967). Those cases are not in point because they involve prepaid rent, which is not in issue here. Cf. *Bellingham Cold Storage Co.,* 64 T.C. 51, 57 (1975). Indeed, the indenture itself, at section 4.03, distinguishes between prepayments of rent and the credits in issue herein.

Petitioner also cites Rev. Rul. 70-119, 1970-1 C.B. 120. Respondent there asserted that the portion of rental payments withheld during the first 3 years of a lease, to be paid ratably in monthly installments in later years, was deductible by an accrual method lessee in the year in which withheld. Although respondent contends that that ruling is factually distinguishable, that ruling is indeed helpful because it shows that the focus of inquiry for a lease payment deduction of an accrual basis taxpayer is on when the liability accrued, not on how it was satisfied.

Petitioner also contends that to deny Conso a deduction for basic rent satisfied by surplus bond proceeds credits would distort its taxable income because to do so would treat Conso as occupying the manufacturing plant rent-free during such basic rent periods. With this, we agree. On the other hand, petitioner's proposed proration of the surplus bond proceeds credit over the full 25-year lease term would also distort Conso's income because the full credit would not be reflected in years during which the benefit therefrom was received. Furthermore, such an approach is impractical, as other credits allowable under the indenture

may arise long after it is possible to reflect such credits over the entire lease term by adjusting all prior lease deductions.

Respondent cites *Meyer Bros., Inc.,* 19 T.C. 104 (1952), in support of his contention that Conso should deduct only the net amount due for each basic rent payment because each accrued deduction should have reflected the reduction in basic rent liability due to credits against that obligation. That case is distinguishable because the funds resulting from a reduction in rental payments due therein were not paid and did not accrue to the lessor's benefit. Here the lessor always received funds fully equal to the basic rent due, either from Conso directly or from an account for which Conso was ultimately the source of the funds.

Respondent argues, in the alternative, that we should hold that the surplus bond proceeds credits constituted taxable income to Conso when applied to basic rent payments because of the tax benefit rule. Under that rule, "if an amount deducted from gross income is later recovered, the recovery is income in the year of recovery." *Estate of David B. Munter,* 63 T.C. 663, 671 (1975). Although the rule is generally addressed to situations in which a deduction in an earlier taxable year is related to a recovery in a later taxable year, the same approach has been applied where both deduction and offsetting recovery occur in the same taxable year. See *Connery v. United States,* 460 F.2d 1130, 1133 (3d Cir. 1972); *Spitalny v. United States,* 430 F.2d 195, 198 (9th Cir. 1970); *Anders v. United States,* 462 F.2d 1147, 1149 (Ct. Cl. 1972), cert. denied 409 U.S. 1064 (1972), rehearing denied 410 U.S. 947 (1973); *Estate of David B. Munter, supra* at 674-677. Here accrued liabilities were satisfied during the same taxable years by crediting surplus bond proceeds against such liabilities—indeed, the liabilities arose and the funds were credited on the same days—and the tax benefit rule should be applied. In making this determination we are satisfied that there is "such an inter-relationship between the event which constitutes the loss [deduction] and the event which constitutes the recovery that they can be considered as parts of one and the same transaction." *Merton E. Farr,* 11 T.C. 552, 567 (1948), affd. sub nom. *Sloane v. Commissioner,* 188 F.2d 254, 262-263 (6th Cir. 1951). Cf. *Capitol Coal Corp.,* 26 T.C. 1183, 1195-1197 (1956), affd. 250 F.2d 361, 364 (2d Cir. 1957), cert. denied 356 U.S. 936 (1958). The rental obligation incurred by Conso originated in the

industrial development bond issue [6] and was reduced by a surplus of bond proceeds from that issue; deductions and income thus arose from the same single, integrated transaction. We accordingly hold that petitioner was required to include the surplus bond proceeds credits in income under the tax benefit rule.

Petitioner contends that Conso's actual liability on its basic obligation never reached $2 million because the cost of construction was less; the surplus bond proceeds accordingly could not result in taxable income because they did not originate in or later reduce the liability that was incurred. This ignores, however, the fixed liabilities which accrued on basic rent due dates and which were reduced by surplus bond proceeds credits on those dates.

We have examined the parties' other contentions and found them unconvincing. Inasmuch as respondent has asserted that the result we reach herein will result in the same deficiency due as determined in the notice of deficiency,[7]

*Decision will be entered for the respondent.*

---

[6] See generally O'Connor, "Financing Costs and Industrial Development Bonds," 61 A.B.A.J. 1539 (1975).

[7] Although the notice of deficiency was framed only in terms of disallowing rental deductions claimed by Conso, respondent added, after a Motion For Leave To File Amendment To Answer, the contention that petitioner received unreported taxable income due to the surplus bond proceeds credits in an Amendment To Answer.